# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROBERT K. WISHON,**

        **Plaintiff,**

**-vs-**                                  **Case No. 6:06-cv-870-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the case is **REMANDED.**

### *PROCEDURAL HISTORY*

Plaintiff filed an application for Social Security Disability Insurance Benefits on June 15, 2004, alleging inability to work due to disability as of January 1, 2002 (R. 45-47). His application was denied initially and on reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ"). On December 9, 2005, the ALJ issued an unfavorable decision (R. 9-17), finding that, as of March 31, 2003, the date last insured, Plaintiff was not under a disability, as defined by the Social Security Act. Plaintiff's request for Appeals Council review was subsequently denied (R. 5-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff filed this action (Doc. No. 1), and the matter is now ripe for review.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claimed to be disabled due to residuals of Hepatitis C, Diabetes, Neuropathy, a liver condition and fatigue (R. 58).

Plaintiff was 52 years old at the time of the decision, but was 49 years old as of March 31, 2003, the date last insured. He had past relevant work experience as a carpenter and cabinet maker.

The medical record below includes records significantly pre-dating Plaintiff's alleged onset, as well as those well past the date last insured. Of note, the early medical records indicate that Plaintiff presented to treating physician Glenn Pfaff, M.D. as early as April 1983, with hypertension and elevated LFT's[1] (R. 247). Suspicion was chronic active hepatitis. Medications were prescribed. In 1985, Plaintiff presented to Dr. Pfaff complaining of back pain and swelling of joints of hands and considerable foot pain (R. 233). Assessment was "early RA"[2] and more medications were prescribed. Plaintiff continued to see Dr. Pfaff and continued to complain of pain, swelling and tenderness throughout 1985 (R. 228-232).

In 1986, Dr. Pfaff noted that Plaintiff was having "considerable problems with his rheumatoid illness" but was otherwise doing reasonably well (R. 228). In 1987, Dr. Pfaff noted that Plaintiff was still tender in small joints of hands and feet" and that Plaintiff's RA was "controlled but still a problem." (R. 226). Anti-inflammatories were recommended in 1991 (R. 224) and, in 1992, Plaintiff complained of chest tightening and parasthesia of arms and legs (R. 220-23). Assessment was "neuropathy vs. med. effects" (R. 220). In 1994, Plaintiff was relatively stable, but a "pins and needles" feeling in his extremities returned in 1996 (R. 216). Stomach pain was an issue in late 1996-

---

[1] An abbreviation for "Liver Function Tests."

[2] Rheumatoid Arthritis.

early 1997 (R. 215). Bilateral foot pain and toe deformities were noted September 5, 2000 (R. 213-14). Plaintiff's blood work was abnormal on September 5, 2000, with a Glucose of 159, and elevated AST and ALT levels[3] (R. 139). January 2001 lab work also showed elevated Glucose, AST and ALT levels (R. 137).

Plaintiff claimed an onset date of January 1, 2002. With respect to the time period at issue, Plaintiff presented to the Emergency Room on May 20, 2001, with flu like symptoms and tachycardia, that eventually resolved (R. 290). In September and October of 2001, Plaintiff presented to Dr. Pfaff with calf pain and swelling (R. 209, 211). Venous imaging was performed, and there was no evidence of deep vein thrombosis (R. 289).

On October 7, 2002, Plaintiff presented to Dr. Pfaff in follow up from lab work (R. 208). Tests revealed chronic active Hepatitis type C, and Plaintiff was referred to a gastroenterologist. On October 18, 2002, Plaintiff called Dr. Pfaff and requested a script for a spa "due to arthritis and messed up feet" (R. 208), and Dr. Pfaff obliged.

Plaintiff saw treating gastroenterologist William Mayoral, M.D., on October 22, 2002 (R. 179). Physical examination was normal, and Plaintiff was scheduled for lab work and other tests. On November 5, 2002, Plaintiff returned to Dr. Mayoral (R. 178). Testing showed Hepatitis 1A with a viral load of 1 million copies. A liver biopsy was scheduled. On examination, he was noted to be asymptomatic, without abdominal pain, weakness, nausea, vomiting or diarrhea.

Liver biopsy showed Grade 4/Stage 4 chronic hepatitis and cirrhosis (R. 177). Interferon/ribavirin therapy was recommended and Plaintiff started the therapy shortly thereafter.

---

[3]AST and ALT levels are used to detect liver damage.

Physical examination on December 13, 2002 was unremarkable, but a colonoscopy and endoscopy was recommended. The colonoscopy (up to the cecum) was normal, but the endoscopy revealed Grade 2 esophageal varices and portal hypertensive gastropathy (R. 176, 287-88). Additional medications were ordered.

On March 12, 2003, just prior to the date last insured, Plaintiff called Dr. Pfaff and complained that his feet were "raw stinging keeping him awake" (R. 207). On examination, Dr. Pfaff noted that Plaintiff "had this problem previously [and it was] thought to be medication effect. With chronic blood pressure problems, Hep C and multiple meds, causation has been difficult to identify." (R. 205). Plaintiff was assessed with parasthesia of feet and Neurotonin was prescribed (R. 205-06).

On March 14, 2003, Plaintiff presented to Dr. Mayoral reporting feeling well and that he was excited about his upcoming trip to the Bahamas (R. 176). On April 25, 2003, however, shortly after Plaintiff's date last insured, Plaintiff reported feeling very weak with occasional muscle aches (R. 175). Physical examination was noted to be unremarkable and Plaintiff's viral load was down to less than 50. Plaintiff was encouraged to continue and complete at least six months of interferon therapy.

On May 1, 2003, Plaintiff returned to Dr. Pfaff, complaining of continued severe foot pain, worse recently (R. 203). Physical exam was mostly unremarkable, and Plaintiff was assessed with neuropathy of feet. Percodan was prescribed. On May 13, 2003, Plaintiff called and asked for more drugs as he "can't stand feet pain" and "nothing is helping." (R. 203). On May 14, 2003 visit, different medications were prescribed (R. 202). In June, he continued to complain of feet pain, and an anti-depressant was added to his considerable list of medications (R. 201).

Plaintiff continued to decline well after his date last insured. He reported to Dr. Mayoral in July 2003 that he had been drinking alcohol for the last several weeks because "I can't sleep at

night." (R. 174). Dr. Mayoral cautioned that he would not provide care for him if he continued to drink. There are medical records relating to a gunshot wound to his thigh on September 12, 2003 (R. 306).

Plaintiff was hospitalized on October 24, 2003, for salmonella, dehydration, confusion, diabetes (blood sugar in ER of 713) and diabetes ketoacidosis (R. 269, 271-73; 279-80). While hospitalized in the intensive care unit (R. 281), he was evaluated by a psychiatrist due to complaints of depression, crying, hallucinations and agitation (R. 274). Assessment was acute delirium, metabolic, resolving, and major depression by history, association with Hepatitis C. (R. 275). Global assessment of functioning was 42; 50 for the past year (R. 276).

Plaintiff was examined in the hospital by Carlos A. Pacheco, M.D., who noted that Plaintiff's new onset diabetes may be related to his treatment for Hepatitis C (R. 286). He was started on Insulin injections. After his discharge from the hospital, Plaintiff returned to his gastroenterologist on November 12, 2003, reportedly feeling weak and with a new onset of diarrhea (R. 172). Of note, he reportedly felt better on the Insulin.

The medical records well past date last insured show significant decline, including an additional finding of colon cancer (R. 345). On May 26, 2005, Plaintiff's treating physician opined that Plaintiff should be placed on social security disability as he is not employable "now or in the foreseeable future." (R. 345).

Plaintiff appeared and testified at his hearing, as did his wife. Plaintiff was not represented by counsel, nor by a non-attorney representative. Plaintiff testified that he stopped working in January of 2002 because "everything kind of mushroomed into everything" (R. 358). He stated that he started chemotherapy for his Hepatitis and "soon as they started that on me, it just whacked me." *Id.*

Plaintiff testified that the therapy made him too tired to do anything. Plaintiff stated that the diabetes "exploded my neuropathy to tremendous levels because I couldn't hardly even walk." (R. 359). He noted that his feet were bothering him for six years and that the pain was probably related to his being diabetic, but he was on medicine for the neuropathy for years before being diagnosed as diabetic (R. 362). Plaintiff testified that his RA had gone into remission but the other illnesses had brought it out (R. 364). He testified as to his continued fatigue and pain. Plaintiff's wife testified that in March 2003 and prior, Plaintiff was not able to work at all due to fatigue (R. 374). No vocational expert appeared or testified.

The record also includes the opinions of two non-examining state agency psychologists that there is insufficient evidence of any mental impairment prior to Plaintiff's date last insured (R. 105-132).

The ALJ determined that Plaintiff met the requirements for a period of disability and Disability Insurance Benefits and was insured for benefits only through March 31, 2003 (R.16, Finding No.1). The ALJ found that there was no evidence that indicated that Plaintiff engaged in substantial gainful activity since his alleged onset date (Finding 2), and found Plaintiff to have chronic liver disease and diabetes, which were severe impairments per the Regulations, but that those medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (Findings 3 and 4). The ALJ found Plaintiff's allegations regarding his limitations to be not fully supported by the medical record, on or prior to March 31, 2003, date last insured (Finding 5). He found Plaintiff unable to perform any of his past relevant work (Finding 6), noted that Plaintiff was an individual closely approaching advanced age (Finding 7), with a high school (or high school equivalent) education (Finding 8), and without transferable skills from any past

relevant work and/or transferability of skills was not an issue (Finding 9). The ALJ found Plaintiff to have the residual functional capacity to perform a "significant range of light work" (Finding 10), and therefore found that a finding of "not disabled" was directed by Medical-Vocational Rule 202.13 ("the Grids") (Finding 11).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises three issues: 1) whether the ALJ erred in relying on a mechanical application of the Grids; 2) whether the ALJ failed to consider each of Plaintiff's impairments and the combined effects of the impairments; and 3) whether the ALJ erred in his analysis of Plaintiff's pain and fatigue. Because the Court finds error in that the ALJ failed to consider all of Plaintiff's impairments, the matter is **REVERSED**.

*The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not

in the abstract as having severe hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.  The Court agrees with Plaintiff that the ALJ did not adequately evaluate Plaintiff's impairments at step two and throughout the rest of the process.

*Evaluating Plaintiff's impairments*

As indicated above, the issue before the ALJ was whether Plaintiff was disabled on or before his date last insured.  Here, the evidence is clear that on or before March 2003, Plaintiff had been diagnosed not only with chronic, active Hepatitis C, *and* stage 4 cirrhosis of the liver, *and* hypertension, but had also been diagnosed and treated for long standing RA and neuropathy.  Despite the record evidence, the ALJ found only the medically determinable impairments of chronic liver disease and diabetes to be "severe" at step two of the evaluation (R. 16).  This was error.

By definition, the step two inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that his impairment is not so slight and its effect not so minimal.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  Plaintiff has met that burden here, with respect to the uncontradicted evidence of pain and limitations arising out of his neuropathy and "messed up feet." Indeed, the ALJ acknowledged elsewhere in the decision that: "He had peripheral neuropathy" (R. 15), but it appears that the ALJ merely treated the neuropathy as a trivial side effect of the diabetes, as opposed to a severe impairment in and of itself.

-9-

Regardless of whether Plaintiff's long standing difficulties with his feet were caused by his rheumatoid arthritis (also ignored by the ALJ), his diabetes (diagnosed after date last insured, but correctly recognized by the ALJ as a severe impairment with respect to the time period at issue), or a reaction to the many medications Plaintiff was taking (as originally thought by the treating physician), the result is the same. An impairment characterized by "raw, stinging" (R. 207) feet, that keeps you awake, and in such pain (R. 203) that you "can't hardly walk,"(R. 359) is *not* a slight abnormality with minimal effect on anyone's ability to work. Substantial evidence does not support the ALJ's finding at step two and thus, the decision cannot stand.

Because the ALJ erred in evaluating Plaintiff's RA/neuropathy, the matter must be reversed. *See Vega v. Commissioner of Social Security,* 265 F. 3d 1214, 1219 (11th Cir. 2001) ("We agree with the reasoning of our sister circuits, as well as our prior case law, holding that remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis."). As the matter must be remanded for reconsideration of *all* of Plaintiff's impairments, the Court need not address the other arguments raised by Plaintiff with respect to the evaluation of the claims of pain and limitation and whether the ALJ properly relied on the Grids, except to say that the ALJ should address these matters anew, upon remand.

A final note is in order. In view of the entire record, it appears beyond debate that Plaintiff is *currently* disabled. The decision before the ALJ, however, was whether Plaintiff was disabled *on or before the date last insured.* Here, the record includes an abundance of information, but not necessarily the appropriate information with which to determine Plaintiff's condition on the date last insured. For example, the ALJ discredited a letter from the treating physician dated May 2005, stating that Plaintiff was unemployable "now or in the foreseeable future." While this was proper,

in that the letter did not speak to the issue of whether Plaintiff was disabled by his impairments as of March 2003, there is no indication that the ALJ made a reasonable effort to determine the date of onset of disability.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). This is especially so, as here, where Plaintiff was unrepresented by counsel. On remand, the ALJ should carefully review the record, and, if it is insufficient to make an informed decision with respect to Plaintiff's condition on or before the date last insured, the ALJ should call upon the services of a medical adviser. *See McManus v. Barnhart,* 2004 WL 3316303 (M.D.. Fla. 2004) ("Because the ALJ was required to make a retroactive inference regarding the existence of a disability caused by a slowly progressive impairment and the medical evidence of record was inadequate and ambiguous with regard to whether Plaintiff was disabled on or before the DLI, the ALJ was required to call upon the services of a medical advisor to assist him in the determination of whether Plaintiff became disabled prior to the DLI."). As it stands, the ALJ's decision is not supported by substantial evidence and was not made in accordance with proper legal standards, and is therefore **REVERSED.**

### *CONCLUSION*

The matter is **REVERSED and REMANDED** to the Commissioner for further proceedings, consistent with this Opinion. The Clerk is directed to enter judgment accordingly, and to close this case.

**DONE** and **ORDERED** in Orlando, Florida on May 14, 2007.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

-12-

Copies furnished to:

Counsel of Record